THE STATE, use of GRIFFIN, *et al* *vs.* HANSON's Adm'x.—
June, 1828.

R, as the executor of T, entered into a testamentary bond on his estate.
Upon the death of R, letters of administration *de bonis non* were granted
to B. In an action on the bond executed by R, brought against his ad-
ministratrix, to recover the distributive shares due to certain legatees
under the will of T, the replication, in assigning the breach, stated among
other things, that B had duly administered all the goods, &c. which came
to his hands; but that R did not duly and properly administer the goods
of T, but misapplied and wasted the same. That by the inventory of
the estate of T, returned to the orphans court, among other, was the fol-
lowing property, to wit, one negro boy J of the value of, &c. &c. which
property was misapplied, wasted and consumed, by R, &c.—*Held,* that
the action could not be sustained.

APPEAL from *Charles* County Court. This was an action of
debt, brought on the testamentary bond executed to the state
on the 29th of March 1808, by *Robert Hanson* the intestate of
the defendant below, (now appellee,) on the estate of *Theophi-
lus Hanson,* as his executor. The defendant pleaded general
performance, and the plaintiff replied non-performance, and as-
signed for breach, that *Theophilus Hanson,* the father of the
said *Robert,* did in his lifetime, to wit, on, &c. make, and in
due form of law, sign, seal and execute, his last will and testa-
ment in writing, and thereby, after bequeathing certain specific
legacies, &c. bequeathed as follows, viz. "*Item.* I leave and be-
queath all the residue of my personal property, of what nature
or kind soever, to my son *Robert,* and my daughter *Mary
H. Hanson,* and their heirs, forever; in trust and confidence,
nevertheless, and for the use and purposes hereafter men-
tioned, and no other use or purpose; that is to say, that my
executors, hereafter mentioned, shall pay my just debts, and
that *Robert Hanson* shall hold and enjoy absolutely one-third
part of the said residue; that my said daughter, *Mary H.
Hanson,* shall hold one other third during her single life, and
after her death or marriage, that which may be assigned for
her use, shall be and remain to the children of *Pamela L.
Briscoe;* and to direct and see that this provision is carried
into effect, I hereby appoint *Robert Hanson* trustee for that
purpose. And as to the other remaining third part of the re-
sidue aforesaid, it is my will and desire that my son *Robert*

*Hanson,* and my daughter *Mary H. Hanson,* should have the legal right, and be trustees thereof; and as in the other bequest to *Pamela L. Briscoe,* they should make use thereof in the best manner they can for the separate use and support of the said *Pamela L. Briscoe,* and her children, for and during her natural life; and at the death of the said *Pamela L. Briscoe,* the said property, last devised, is to be equally divided between all the children she may leave." And he thereby constituted and appointed his son *Robert Hanson,* and his daughter *Mary H. Hanson,* executor and executrix, trustees and overseers, of his last will and testament. And that after making and executing his last will and testament, to wit, &c. the said *Theophilus Hanson* died, to wit, at the county aforesaid, by which said will and testament the said *Robert Hanson* was appointed executor thereof, and to whom letters testamentary were by the orphans court of said county, in due form of law granted. In which said last will and testament, among others, is the following clause and bequest, to wit: "that *Robert Hanson* shall hold and enjoy," &c. [as set forth in the said will.] The replication then averred, that after the execution of the said will, and death of the said *Theophilus,* the said *Mary H. Hanson* intermarried with a certain *Samuel Griffin,* which said *Mary,* as well as the said *Robert* and the said *Pamela L. Briscoe,* have since all died; by reason whereof, and by virtue of the last will and testament aforesaid, the children of the said *Pamela* became entitled to two-thirds of the residue of the personal estate of the said *Theophilus,* after all necessary allowance and disbursements upon the administration of the said estate were discharged and allowed. That upon the death of the said *Robert,* letters of administration *de bonis non* upon the estate of the said *Theophilus,* were granted to *Thomas Burgess,* who hath duly administered all the goods and chattels of the said deceased which came to his hands; but that the said *Robert* did not duly and properly administer the goods and chattels of said deceased, according to the tenor and effect of the writing obligatory aforesaid, and to the condition thereof, but misapplied and wasted the same. That after the death of the said *Robert Hanson,* and marriage and death of the said *Mary H. Hanson,* to wit,

&c. a certain *Peter Griffin*, in the endorsement of the origi-
nal writ in this cause mentioned, was by the orphans court of
*Charles* county in due form of law appointed trustee to the
children of the said *Pamela L. Briscoe*.    That by the inven-
tory of the estate of the said deceased returned to the orphans
court, among other was the following property, to wit, one
negro boy *Joe*, of the value of, &c. &c. amounting in the
whole to the sum of $638 25, of which amount, to wit, the
sum of $422 75, the children of the said *Pamela* are enti-
tled by virtue of the said last will and testament, and for
which suit is brought by the trustee for their use as aforesaid.
Which said property was misapplied, wasted and consumed,
by the said *Robert*, in his lifetime; of which said property the
children of the said *Pamela*, by their guardian or trustee, or
any other person for their use, never received any part or be-
nefit therefrom, to wit, at, &c.    The replication then avers,
that the said *Robert* had not observed, performed, fulfilled
and kept, the said several matters and things in the condition
of the said writing obligatory mentioned, but in this had
wholly failed, &c.    *Rejoinder*, that certain proceedings were
had in the orphans court in relation to the subject matter in
the present suit, and upon such proceedings the said court
then and there pronounced the following judgment, to wit:
"Upon hearing the bill and demurrer in this case, the court
order and determine, that the bill be dismissed, with costs to
the respondents, and that the administrator *de bonis non* is
responsible for any and all claims in this court against the es-
tate of *Theophilus Hanson*," &c.    To this rejoinder the plain-
tiff demurred; and the county court overruled the demurrer,
and rendered judgment for the defendant.    The plaintiff ap-
pealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE,
MARTIN, ARCHER, and DORSEY, J.

*J. G. Chapman*, for the Appellant.    The action in this case
arises upon a testamentary bond, for a *devastavit* of the ex-
ecutor, and is brought against the executor's personal repre-
sentative. *Theophilus Hanson*, after bequeathing certain spe-
cific legacies, gives one third of the residuum of his property

to the children of Mrs. *Briscoe*, his daughter, and upon the marriage of his other daughter *Mary*, he gives one other third part to Mrs. *Briscoe's* children, and appoints his son *Robert Hanson* the trustee and his executor. *Robert Hanson* obtained letters testamentary upon the estate of his father, and converted a large amount of the personal property to his own use, and does not account to the orphans court for it. He died before the settlement of the estate, and letters of administration *de bonis non* were granted to *Thomas Burgess*, who duly administered all the property which *Robert Hanson*, the executor, did not waste. To the plaintiff's replication the defendant rejoined, and the plaintiff demurred, which the court below overruled. Three points arise upon the demurrer. 1. Whether the action can be sustained against the administratrix of the executor, on the bond executed by the executor of *Theophilus Hanson*, for a breach of the condition of the bond? 2. Whether a decision in the orphans court, relative to the estate of a deceased person, is conclusive, and precludes the party from his action in the county court on the testamentary bond? 3. That there is such a departure in the rejoinder from the plea, as to be fatal.

1. The *first point* is to be settled by its analogy to adjudged cases. In the cases referred to in *Wheatly v Lane*, 1 *Saund.* 219, *(note 8,)* a judgment against an executor is evidence of assets on a *devastavit;* and upon that fact being established, the debt becomes personal, and the executor's personal representative is liable in his character of administrator or executor. In the case now before the court, the *devastavit* is admitted, and the question does not vary from the point decided in *Wheatly v Lane*, except that the action is upon the bond for breach of the condition. By the *Stat.* 30 *Car.* II. *ch.* 7. and 4 & 5 *William & Mary, ch.* 24, *s.* 12, the executor or administrator of any executor, who shall waste or convert to his own use, the estate of his testator, shall be liable and chargeable in the same manner the testator or intestate would have been if living. It seems to be evident, that if *Robert Hanson*, the executor, were living, he would be liable to the equitable plaintiffs in an action on his bond for the *devastavit*. The case of *Shelton v Hawling*, 1 *Wils.* 258, seems to be

conclusive as to the liability of the administrator of the execu-
tor, for the *devastavit* committed by the executor. This was
the principal point decided in the court below; and if the prin-
ciple is correct, the administrator *de bonis non* cannot be an-
swerable; for upon the *devastavit* being established, the debt
becomes personal as to the executor, and if living, he would
be chargeable *de bonis propriis;* his administratrix must,
therefore, be chargeable in her representative character. The
action could not have been brought upon the administration
bond entered into by the administratrix, for she might have
administered all the goods of *Robert Hanson,* and yet the se-
curities on his bond would not have been discharged; neither
could the action be sustained against the administrator *de bonis
non,* for he is not in default, having administered all the goods
of the testator, *Theophilus Hanson,* which came to his pos-
session, and complied with the condition of his bond. If *Ro-
bert Hanson's* estate was insolvent, and the securities in his
bond in the like situation, will it be contended that the admi-
nistrator *de bonis non,* would be answerable to the distribu-
tees for the executor's *devastavit?* If such doctrine was law,
who would administer after a wasteful executor? He, then,
who is in default, should be chargeable for the waste. The
appellee represents the executor, *Robert Hanson,* and should
be chargeable for his *devastavit,* as far as she has assets of his
estate. *Merchant v Driver,* 1 *Saund.* 307. *Blackmor v
Mercer,* 3 *Saund.* 403. It will not be denied that the admi-
nistrator *de bonis non* could have maintained an action against
the administratrix of the executor, (the appellee,) for the pro-
perty which was not accounted for by the executor, *Robert
Hanson. Haslett's Adm'r. D. B. N. v Glenn,* 7 *Harr. &
Johns.* 17. But it is contended on the part of the equitable
plaintiffs, (the appellants,) that an action is given to them on
*Robert Hanson's* bond, by the acts of assembly of 1718, *ch.*
5; 1798, *ch.* 101, *sub ch.* 3, *s* 10. In an action of *assump-
sit* between the legatee and the executor, the law will not im-
ply a promise, except for a specific legacy; but here the action
is for a breach of the condition of the bond, and is brought
for the use of those interested, against the representative of
him who failed to comply with the condition of his bond to

the state, and to "discharge the duties required of him by law in the faithful performance of the office." The state is the plaintiff, and the condition broken the cause of action. If the executor was living, can it be denied that he would be answerable in this form of action? He is represented by the appellee, who is chargeable with his contracts, and answerable for his broken covenants. If the legatees were driven to their action against the administrator *de bonis non,* and be compelled to institute suit against the administratrix of *Robert Hanson,* it would be such a multiplication of suits as seems to be guarded against by the acts of 1718 and 1798, by giving to all persons interested, an action in the name of the state on the bond. Upon the breach of the condition of the bond, the executor becomes indebted to the state in the amount of the penalty, for the use of those interested. The state is trustee for the legatees, the debt accrues upon breach of the condition, the executor is chargeable *de bonis propriis,* and his administratrix is chargeable in her representative character for his debts. The state, as trustee for the legatees, is a creditor, and brings this action. The administratrix of the executor is bound to account for property disposed of by the executor, and not accounted for by him. *Act of Ass.* 1816, *ch.* 203, *s.* 3.

2. The proceedings in the court below were commenced prior to those had in the orphans court, and of a different character. An application to the orphans court for an order to compel a settlement, does not preclude the party interested from his action on the bond. *Act* 1798, *ch.* 101, *sub ch.* 15, *s.* 19. The county court has jurisdiction in such cases. 1798, *ch.* 101, *sub ch.* 14, *s.* 6. The defendant below, (the appellee,) by her rejoinder to the plaintiff's replication, sets out, that certain proceedings were had in the orphans court, without stating the nature of those proceedings. The proceedings in that court could not have been of the same nature, because the act of 1798 does not give to that court jurisdiction in an action on the testamentary bond. The administrator *de bonis non* may be answerable for all claims in the orphans court against the estate of *Theophilus Hanson,* (the testator,) and yet not answerable in the county court for legacies which he never received. The appellee should have stated in her re-

joinder, the application which was made to the orphans court, with the record of the proceedings.

8. The rejoinder is a departure from the plea—the plea answers the declaration, but the rejoinder neither answers the replication, nor is it a continuation of the defence commenced by the plea. The rejoinder does not support the plea. The plea alleges that *Robert Hanson* did perform the condition of the bond, &c. The rejoinder states, that certain proceedings were had in another court, and that that court decided that another person was answerable for claims against the estate of *Theophilus Hanson.* This is not a claim against his estate, but against the estate of *Robert Hanson.* This is a departure, and does not answer the replication. 1 *Chit. Plead.* 619, 627. *Hays v Bryant,* 1 *H. Blk.* 253. *Roberts v Mariett,* 3 *Saund* 188. *Richards v Hodges,* 2 *Saund.* 84. *Harding v Holmes,* 1 *Wils.* 122. *Chapman v Chapman, Cro. Car.* 76, 77. *L. Proprietary v Cockshut,* 1 *Harr. & M'Hen.* 40.

No Counsel argued for the Appellee.

JUDGMENT AFFIRMED.

MACCUBBIN, *et al. vs.* CROMWELL.—June, 1828.

A widow has a right to ask in equity part of a fund in lieu of dower, where that fund has been produced by the sale of her husband's lands, which were subject to her dower, and increased, by being sold clear of that incumbrance with her approbation, and consent; and where she has assigned such a claim, her assignee will succeed to her rights.

An audit may be examined on appeal, although no exceptions were taken to it in chancery; and if the chancellor acted upon *improper testimony,* or mistook the principles of law, the audit will be reformed, or the decree reversed.

Where funds are in the court of chancery, and a party petitions to have them applied in discharge of his claim, it has long been the uniform practice of that court in this state, to receive the papers, on which the claim is founded, as *prima facie* evidence, and the chancellor acts on them accordingly, unless *the testimony is put in issue, and full proof required* by the opposite party.

This practice is founded in convenience, to save expense to suitors in that court, and ought not to be disregarded. It does not deprive the par-